```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

Rebecca Pratt

    v.                                            Civil No. 18-cv-966-LM
                                                                  Opinion No. 2020 DNH 030
Andrew Saul[1], Commissioner,
U.S. Social Security
Administration

## **O R D E R**

Pursuant to 42 U.S.C. § 405(g), Rebecca Pratt seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits.  Pratt moves to reverse the Commissioner's decision, contending that the Administrative Law Judge ("ALJ") erred by assigning improper weight to the medical opinions in the record, improperly evaluating Pratt's subjective descriptions of her symptoms, and providing an incomplete hypothetical to the vocational expert.  The Administration moves to affirm the Commissioner's decision.  For the reasons discussed below, the decision of the Commissioner is affirmed.

---

[1] On June 17, 2019, Andrew Saul was sworn in as Commissioner of Social Security.  Pursuant to Fed. R. Civ. P. 25(d), he automatically replaces the nominal defendant, Nancy A. Berryhill, who had been Acting Commissioner of Social Security.

## STANDARD OF REVIEW

In reviewing the final decision of the Commissioner under Section 405(g), the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. 42 U.S.C. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016). "Substantial-evidence review is more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (citation omitted). Rather, the court "must uphold the Commissioner's findings if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support her conclusion." Id. (citation, internal modifications omitted).

## DISABILITY ANALYSIS FRAMEWORK

To establish disability for purposes of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

. . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. 20 C.F.R. § 404.1520(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The claimant "has the burden of production and proof at the first four steps of the process." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). The first three steps are: (1) determining whether the claimant is engaged in substantial gainful activity; (2) determining whether she has a severe impairment; and (3) determining whether the impairment meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii).

If the claimant meets her burden at the first three steps of the sequential analysis, an ALJ assesses the claimant's residual functional capacity ("RFC"), which is a determination of the most a person can do in a work setting despite the limitations caused by her impairments. Id. §§ 404.1520(e), 1545(a)(1). At the fourth step of the sequential analysis, the ALJ considers the claimant's RFC in light of her past relevant work. Id. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, the ALJ will find that the claimant is not disabled. See id. If the claimant cannot perform her past relevant work, the ALJ proceeds to the fifth step, at which it

is the Administration's burden to show that jobs exist in the economy which the claimant can do in light of her RFC. See id. § 404.1520(a)(4)(v).

**BACKGROUND**

A detailed recital of the factual background can be found in Pratt's statement of facts (doc. no. 7-2) as supplemented by the Commissioner's statement of facts (doc. no. 9). The court provides a brief summary of the case here.

Pratt filed an application for disability insurance benefits on October 12, 2016, initially alleging a disability onset date of November 7, 2011. Pratt alleged that she was disabled due to depression, anxiety, and fibromyalgia. Her last insured date was June 30, 2014.

After the Administration denied Pratt's application, Pratt requested a hearing before an ALJ. The ALJ held a hearing on November 7, 2017, at which Pratt amended her alleged disability onset date to June 30, 2014, the same date as her date last insured. Consulting physician Dr. John Pella testified at the hearing. Because medical records relating to Pratt's psychological condition had not been provided to the consulting psychologist scheduled to testify that day, the ALJ continued the hearing.

The ALJ held a second hearing on March 29, 2018. Pratt testified at the second hearing, as did consulting psychologist Dr. Richard Anderson and impartial vocational expert Whitney J. Eng.

The ALJ issued an unfavorable decision on April 18, 2018. He found that Pratt had a combination of severe impairments consisting of depression, dysthymia, and fibromyalgia. The ALJ did not find that Pratt had medically determinable impairments due to symptoms of anxiety.

In addition, the ALJ found that Pratt had the residual functional capacity to perform light work as defined at 20 C.F.R. § 404.1567(b), except that she was limited to simple, routine tasks. Admin. Rec. at 16. The ALJ further found that Pratt could not tolerate exposure to extreme temperatures or to dust, odor, fumes, or respiratory irritants. Id. In assessing Pratt's RFC, the ALJ found that Pratt's testimony regarding the intensity, persistence, and limiting effects of her reported symptoms was not consistent with the medical evidence of record. The ALJ relied on the testimony of Drs. Pella and Anderson and gave little weight to the medical opinion of treating physician Dr. Girish Joshi.

In response to hypothetical questions posed by the ALJ, Eng, the impartial vocational expert, testified to her opinion that a person with Pratt's age, education, past work experience,

5

and RFC could perform the job duties of a retail marker, a cleaner/housekeeper, and a café attendant. Based on this testimony, the ALJ found at Step Five of the sequential process that Pratt was not disabled for purposes of the Social Security Act.

On September 6, 2018, the Appeals Council denied Pratt's request for review. In consequence, the ALJ's decision became the Administration's final order for purposes of judicial review. 20 C.F.R. § 422.210(a); see also, e.g., Sims v. Apfel, 530 U.S. 103, 107 (2000). This action followed.

**DISCUSSION**

Pratt raises three broad claims of error on appeal. She argues that the ALJ erred in: (1) weighing the medical opinions in the record; (2) evaluating Pratt's subjective complaints; and (3) posing hypothetical questions to the vocational expert. The court addresses each argument below.

I. Medical Opinions

Pratt contends that the ALJ erred in weighing the medical opinions in the record. Specifically, Pratt argues that the ALJ: (1) erroneously afforded relatively lower weight to treating physician Dr. Joshi's opinion than to that of consulting physician Dr. Pella and erroneously adopted a portion

6

of Dr. Pella's opinion; and (2) erroneously failed to consider a portion of consulting psychologist Dr. Anderson's opinion.

"An ALJ is required to consider opinions along with all other relevant evidence in a claimant's record." Ledoux v. Acting Comm'r, Soc. Sec. Admin., Case No. 17-cv-707-JD, 2018 WL 2932732, at *4 (D.N.H. June 12, 2018). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

The ALJ analyzes the opinions of state agency consultants, treating sources, and examining sources under the same rubric. See id.; 20 C.F.R. § 404.1527(c). The ALJ must consider "the examining relationship, treatment relationship (including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship), supportability of the opinion by evidence in the record, [and] consistency with the medical opinions of other physicians," along with the doctor's expertise in the area and any other relevant factors. Johnson v. Berryhill, No. 16-cv-375-PB, 2017 WL 4564727, at *5 (D.N.H. Oct. 12, 2017).

A. Drs. Joshi and Pella

Dr. Joshi began treating Pratt in June 2014. Admin. Rec. at 43, 596. However, the records of Pratt's consultations with Dr. Joshi from June 2014 through May 2015 were lost and were not available for the Administration's review in connection with Pratt's application for benefits. Id. at 68, 394. The first available record of those consultations dates from June 22, 2015, when Pratt presented for treatment in connection with hives and depression. Id. at 398.

In October 2017, Dr. Joshi filled out a form provided to him by Pratt's counsel. Id. at 801-805. By checking boxes on the form, Dr. Joshi expressed his opinion that Pratt was unable to stand for more than five minutes without needing to sit or move, that she could sit and stand or walk for less than two hours in an eight-hour work day, and that she could walk less than a city block without rest. Dr. Joshi opined that Pratt could rarely lift three pounds, rarely look up, rarely hold her head in a static position, and only occasionally turn her head to the left or right. Dr. Joshi opined that Pratt could occasionally twist her body, rarely stoop or bend, and never crouch or climb. Dr. Joshi checked a box on the form indicating his opinion that Pratt's impairments had "existed since the claimant's alleged onset date of 6/30/2014." Id. at 801.

Dr. Joshi's progress notes from Pratt's June 22, 2015, consultation (the earliest in the record) do not indicate that Pratt reported any pain-related symptoms at that time. Id. at 398-400. His progress notes from June 29, 2015, through December 21, 2017 (the most recent in the record) do indicate, however, that over that 30-month period Pratt periodically reported pain symptoms, and that over that time she reported such symptoms with progressively increasing frequency and severity. Id. at 286-397, 861-906. The earliest indication in Dr. Joshi's notes that he believed Pratt might suffer from fibromyalgia occurred on October 28, 2015. Id. at 367.

Notwithstanding Dr. Joshi's medical opinion of October 2017, his contemporaneously maintained progress notes contain no suggestion prior to 2017 of any impairment in Pratt's ability to walk, sit, stand, move her neck, or otherwise move her body. Id. at 286-400. Indeed, throughout the period from June 22, 2015, through December 6, 2017, Dr. Joshi repeatedly recorded his affirmative impressions that Pratt's gait was "normal" and/or that she had normal motor strength in all of her extremities, including her legs, id. at 287, 293, 297, 309, 313, 322, 333, 340, 347, 356, 360, 871, 877, 881, 886, 897, 901, 922, and that she had the "full range of movement" in her neck and/or that her neck was "supple," id. at 286, 293, 296, 309, 321, 333,

340, 347, 356, 359, 371, 374, 379, 382, 385, 388, 392, 396, 877, 881, 885, 897, 922.

Following review of all available medical records bearing on Pratt's claimed physical impairments, consulting physician Dr. Pella opined that the records were not sufficiently complete to support any conclusion regarding Pratt's RFC as of her date last insured of June 30, 2014, which was also her alleged disability onset date. Id. at 71-72. Dr. Pella noted that there were no available medical records of Pratt's physical condition between approximately 2009 and her date last insured, and that the available records from 2009 and earlier did not suggest the existence of potentially disabling impairments. Id. Dr. Pella further noted that the available records from June 2015 and later likewise did not suggest the existence of potentially disabling impairments as of June 2014. Id.

Asked to assume that Pratt suffered from fibromyalgia as of her date last insured, Dr. Pella opined arguendo that on or before June 30, 2014, Pratt would have been capable of performing work at the light exertional level. Id. at 72-74. In support of his opinion, Dr. Pella noted Pratt's reported pain symptoms began becoming significant in or around October 2015. Id. He further noted that Pratt's prescriptions for pain medication suggested that her pain symptoms increased in severity over time, further suggesting that they were less

10

severe prior to the date Dr. Joshi's available records begin. Id.

When asked whether Pratt's pain symptoms might interfere with her ability to stay on task, Dr. Pella declined to answer the question, noting that any recently reported impairment in her ability to concentrate could as easily be caused by her recent regimen of prescribed opioid medications as by her pain symptoms. Id. at 74. Dr. Pella further noted that Pratt had recently been diagnosed with respiratory problems, apparently due to having been a cigarette smoker. Id. at 74-76. In light of those problems, Dr. Pella opined that Pratt should be limited—apparently currently rather than as of her date last insured—to occasional exposure to irritants, dust, odors, fumes, respiratory irritants, and extremes of temperature. Id.

Pratt contends that the ALJ erred in giving greater weight to Dr. Pella's opinion than to Dr. Joshi's opinion regarding her physical limitations. She further assigns error to the ALJ's adoption of Dr. Pella's opinion that, as of her date last insured, Pratt could have been capable of performing work at the light exertional level.

"[T]reating physicians' opinions are ordinarily accorded deference in Social Security disability proceeding." Richards v. Hewlett-Packard Corp., 592 F.3d 232, 240 n. 9 (1st Cir.2010). This is because "these sources are likely to be the medical

professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927(c)(2). A treating-source opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(c)(2).

If, however, the treating-source opinion conflicts with other opinions in the record, the ALJ "may reject the opinion of the treating physician so long as an explanation is provided and the contrary finding is supported by substantial evidence." Tetreault v. Astrue, 865 F. Supp. 2d 116, 125 (D. Mass. 2012) (internal quotation marks, citation omitted).[2] Moreover, where a consulting physician's opinion is more consistent with the medical evidence of record than the opinion of a treating physician, an ALJ may appropriately afford the consulting physician's opinion greater weight than that of the treating

---

[2] An ALJ must give "good reasons" for rejecting a treating source's opinion. 20 C.F.R. § 416.927(c)(2); see also Polanco-Quinones v. Astrue, 477 Fed. Appx. 745, 746 (1st Cir. 2012) (unpublished disposition).

physician. Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991); Margarita Aleksandrov Sokolovskaya v. Colvin, 187 F. Supp. 3d 324, 334 (D. Mass. 2016). Finally, where a consulting physician's opinion regarding a claimant's RFC is grounded in medical evidence, the consulting physician's opinion constitutes substantial evidence upon which an ALJ may properly rely in making an RFC assessment. Rodriguez v. Sec'y of Health & Human Servs., 893 F.2d 401, 403 (1st Cir. 1989).

Here, the ALJ explained that he afforded little relative weight to Dr. Joshi's opinion regarding the limitations affecting Pratt's ability to work as of her date last insured because they were not consistent with the available medical evidence. Admin. Rec. at 18. The ALJ specifically noted that Dr. Joshi's opinion was not grounded in contemporaneous records of Pratt's physical condition as of her date last insured, and that the available records did not reflect any of the limitations Dr. Joshi ascribed to Pratt even at much later dates. Id. The ALJ further noted that Dr. Pella's assessment of Pratt's physical RFC was consistent with the available records. Id.

Pratt has not shown that the ALJ erred either in affording relatively greater weight to Dr. Pella's opinion than to Dr. Joshi's or in relying on Dr. Pella's opinion as substantial

evidence supporting his assessment of Pratt's RFC. To the contrary, the ALJ provided specific, legitimate, and convincing grounds for his conclusions that Dr. Joshi's opinion was inconsistent with available medical evidence and that Dr. Pella's opinion was consistent with the evidence. It follows that the ALJ deployed the proper legal standards and based his conclusions on substantial medical evidence of record. No grounds therefore exist for disturbing the Commissioner's final decision based on the ALJ's determinations regarding the credibility and relative weight of Drs. Joshi and Pella's opinions.

### B. Dr. Anderson

Following review of all available medical records bearing on Pratt's claimed physical impairments, consulting psychologist Dr. Anderson opined that, as of her date last insured, Pratt would have had mild impairments in interacting with others, and moderate limitations in concentration, persistence, and pace and in adapting and managing herself. Admin. Rec. at 32-33. Dr. Anderson expressly declined to quantify those impairments in terms of functional limitations on Pratt's ability to work. Id. at 33, 34. However, in response to a question posed by the ALJ, Dr. Anderson expressed doubt that Pratt's impairments would have

14

been sufficiently severe to limit her to only simple, routine tasks.  Id. at 33.

On the basis of Dr. Anderson's refusal to quantify Pratt's mental impairments in terms of functional limitations, Pratt now assigns error to the ALJ's inclusion of a limitation to simple, routine tasks in his assessment of Pratt's RFC.  However, it is difficult to understand how the ALJ's inclusion in Pratt's RFC of a greater limitation than that clearly supported by the medical evidence could have caused her any harm.  It is the claimant's burden to show that an ALJ's purported error resulted in prejudice to her, Shinseki v. Sanders, 556 U.S. 396, 409 (2009), and here Pratt has not made any attempt to meet that burden.  Indeed, nothing in the record suggests any possibility that Pratt could have been found disabled had the ALJ not assessed her RFC as containing the limitation to simple, routine tasks.  The ALJ's inclusion of that limitation in his assessment of Pratt's RFC therefore provides no ground for disturbing the Commissioner's final decision.  See, e.g., Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000).

II.  Pratt's Subjective Complaints

At the second hearing before the ALJ, Pratt testified regarding her physical and psychological condition.  Admin. Rec. at 45-55.  Specifically, she testified that in 2009 she began

experiencing anxiety and panic attacks, and that from 2014 onwards she rarely left her home due to anxiety, depression, and symptoms of pain. Id. She further testified that her symptoms included fatigue, inability to sustain mental or physical activity, inability to concentrate, disturbed sleep, anxiety, panic attacks, depression, anger, suicidal thoughts, restless leg syndrome, hives, fibromyalgia, and high blood pressure. Id.

Pratt now argues that the ALJ improperly discredited her subjective testimony. Notably, she does not offer any argument that had the ALJ fully credited her testimony, he would have assessed her RFC any differently. Nevertheless, she assigns error to the ALJ's finding that her statements concerning the intensity, persistence, and limiting effects of her symptoms were "inconsistent because there is very little medical evidence documented in the record prior to the expiration of insured status that supports her allegations." Id. at 17. Pratt contends that the ALJ's finding was erroneous because the ALJ failed to consider her explanation for the absence of medical records.

At the second hearing, Pratt offered testimony regarding a gap in her medical records from approximately 2009 through 2015. Pratt explained that although she had begun consulting with Dr. Joshi in June 2014, he subsequently moved offices, resulting in

the loss of all records of her consultations with him between June 2014 and June 2015. Id. at 42-45.

Nothing in the ALJ's opinion suggests that he disregarded Pratt's explanation for the missing records. Because the gap in records of treatment for Pratt's symptoms extended from 2009 to 2015, and because Pratt's explanation addressed only the absence of records from June 2014 (the month of her date last insured) through May 2015, the absence of medical records suggests that Pratt did not consistently seek medical treatment for her allegedly disabling conditions prior to her date last insured, notwithstanding her proffered explanation for the lost records.

Moreover, the gap in Pratt's medical records is not the sole explanation the ALJ offered for his finding regarding Pratt's testimony. The ALJ additionally found that the chronologically "remote" medical evidence of record was inconsistent with Pratt's subjective testimony. Id. at 18. Specifically, the ALJ noted the absence of clinical findings that Pratt suffered from acute distress at any time prior to her date last insured, and further noted that Pratt's mental status exams of record were generally unremarkable. Id.

The court agrees with Pratt that the ALJ was required to consider her subjective testimony regarding the intensity, persistence, and limiting effects of her symptoms in assessing her RFC. Coskery v. Berryhill, 892 F.3d 1, 4 (1st Cir. 2018);

17

see also 20 C.F.R. § 404.1529(c)(3); S.S.R. 16-3p. The record establishes that the ALJ fully complied with his obligation to do so. Admin. Rec. at 17-18. The ALJ's findings regarding the credibility of Pratt's subjective testimony therefore provide no ground for disturbing the Commissioner's final decision.

III. Hypothetical Questions Posed to the Vocational Expert

At the second hearing, the ALJ asked Eng, the vocational expert, whether jobs existed in the national economy which could be performed by a person with Pratt's age, education, past work experience, and RFC. In his hypothetical questions, the ALJ characterized Pratt's RFC as limiting her to the light exertional level, to simple and routine tasks, and to never being exposed "to dust, odors and fumes, or extreme cold or extreme heat." Admin. Rec. at 56-57. Noting that the ALJ assessed Pratt's RFC as containing a limitation prohibiting exposure to "dust, odor, fumes, or respiratory irritants," id. at 16 (emphasis supplied), Pratt now assigns error to the ALJ's failure to include "respiratory irritants" in the hypotheticals he posed to Eng. Pratt argues that the purported error was not harmless because the evidence of record does not "clarify the impact of this additional limitation" on the availability of jobs Pratt was capable of performing.

Pratt's argument is not persuasive. The court acknowledges that "in order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities." Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). Here, the ALJ included a limitation prohibiting exposure to the respiratory irritants "dust, odor, and fumes" in his hypothetical questions, effectively incorporating the assessed limitation. Moreover, nothing in the Dictionary of Occupational Titles' entries for the occupations of retail marker, cleaner/housekeeper, or café attendant suggests that the duties of those positions require an ability to tolerate exposure to respiratory irritants in general. D.O.T. 209.587-034; D.O.T. 311.677-010; D.O.T. 323.687-014. Even if the failure to include the phrase "respiratory irritants" in the hypothetical questions were deemed erroneous, such error would therefore necessarily have been harmless. See, e.g., Dixson v. Colvin, Case No. 2:13-CV-165-GZS, 2014 WL 1569530, at *5 (D. Me. Apr. 18, 2014); see also Ward, 211 F.3d at 656.

## CONCLUSION

For the foregoing reasons, Pratt's motion to reverse (doc. no. 7) is denied, and the Commissioner's motion to affirm (doc.

no. 8) is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 3, 2020

cc:  Counsel of Record